### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **DEBORA DIANE MORALES-PARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:12-CV-1691-RDP** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

Plaintiff, Debora Diane Morales-Parris, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. Parris[1] timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the ALJ applied the proper legal standards. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a

---

[1] Plaintiff indicated that her correct last name is Parris. R. 37.

reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A Jun.1981)). Therefore, this court reviews de novo the Commissioner's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In the present case, Parris is seeking only Title II disibility insurance benefits. R. 10. Based upon her earnings records, Parris has sufficient quarters of coverage to remain insured through December 30, 2009. R. 10. Therefore, Parris must establish that she became disabled on or before December 30, 2009, her date last insured. *See* 42 U.S.C. § 423(d)(1)(A); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

Disability under the Social Security Act (the "Act") is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ

determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the Administrative Law Judge (ALJ) determined Parris was not engaged in substantial gainful activity, and found she had the following severe impairments: "osteoarthritis of the knees and right shoulder; degenerative disc disease of the cervical spine; status post carpal tunnel repair of the right arm; heel spur and plantar fascial fibromatosis of the right foot, pre-treatment and recovery; history of depression; history of anxiety; hypertension; coccyx bone prominence; [and] obesity pre-gastric bypass surgery." R. 12. The ALJ concluded Parris did not suffer from a listed impairment. R. 13. He found that from March 3, 2009, through her date last insured, she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with additional limitations that included only occasionally reaching overhead with her right arm. R. 16. She was also restricted to "work that is simple, routine and repetitive, requiring only one-to-two step tasks in a low stress job." R. 16. However, the ALJ found that between February 22, 2008, and March 3, 2009, Parris was limited to sedentary work as defined in 20 C.F.R. § 404.1567(a), with the same additional restrictions. R. 16-17. During that period, the

ALJ also determined that Parris was limited "to siting and standing at reasonable intervals while remaining at her workstation." R. 17. Based upon these RFC findings, the ALJ found Parris was unable to perform her past relevant work. R. 27.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to establish the presence of other jobs at step five[2]. *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids. *Id*. at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id*. Based on Parris's RFC and the testimony of a vocational expert (VE), the ALJ found Parris could perform other work in the national economy. R. 27-28, 89-92. Therefore, he found she was not disabled at step five of the sequential evaluation framework. R. 29.

### III.    FACTUAL BACKGROUND

Parris filed a prior application for a period of disability and disability insurance benefits on June 28, 2005. R. 149. After the agency denied Parris's application initially on November 5, 2005, ALJ Robert G. Faircloth held a hearing on October 10, 2007. R. 102-44. On February 21, 2008, he denied her application. R. 146-58. Parris did not pursue an administrative appeal of that decision.

Parris filed her current application for a period of disability and disability insurance benefits on July 29, 2009, and alleges she became disabled on July 7, 2004. R. 10. She was 44 years old on her date last insured, and has a high school education. R. 27. She has past relevant work as "a spool

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

operator, yarn winder/inspector, sewing machine operator, garment inspector and food broker." R. 27. Parris alleges she is disabled because of problems with her back, shoulder, hands, knees, feet, depression, and anxiety. R. 259.

On January 25, 2011, the ALJ who issued the decision under review, Joseph F. Dent, held a hearing on Parris's current claim. R. 35-101. At the hearing, ALJ Dent indicated that res judicata would prevent him from considering the time period before the date of ALJ Faircloth's decision.[3] R. 44. In his decision, ALJ Dent made the following finding: "Based on the totality of the evidence, there is no basis to disturb the prior decision. That decision is dated February 21, 2008. Therefore, this decision is concerned only with the period between February 22, 2008, and the date last insured." R. 19.

The regulations provide that after four years from the date of the initial determination, claims may be reopened only for very limited reasons, including that the prior determination "was obtained by fraud or similar fault."[4] 20 C.F.R. § 404.988(c). The ALJ did not discuss any of the allowable reasons, and there is no evidence of such reasons in the record. Because Parris's prior claim was not reopened, the doctrine of res judicata bars her from asserting a claim for benefits prior to February 22, 2008. *See* 20 C.F.R. § 404.957(c)(1). Therefore, the time period at issue in this case is from February 22, 2008, through December 30, 2009. Treatment records from the relevant period show Parris saw Dr. Rickless on May 8, 2008, complaining of left foot pain. R. 380. On examination, Dr. Rickless found no limitation of motion of the neck, arms, hips, and knees. R. 380. She was tender

---

[3] At the hearing, ALJ Dent incorrectly stated the date of ALJ Faircloth's decision as February 13, 2008. R. 44. That decision was in fact rendered February 21, 2008. R. 158.

[4] Parris's prior claim was initially denied on November 5, 2005. R. 149.

at the plantar fascia, and he diagnosed "foot-heel pain." R. 380. He recommended exercises and arch supports. R. 380.

Parris saw Dr. Jenkins on June 24, 2008, complaining of lower back pain, abdominal pain, and painful urination for the past two weeks. R. 534. Parris's urine analysis was normal, and she was diagnosed with diffuse abdominal pain. R. 536.

Parris saw Dr. Padula, on July 22, 2008, with a painful right heel spur. R. 382. Dr. Padula diagnosed a heel spur and plantar fascial fibromatosis based upon x-rays, and recommended arch supports and over-the-counter orthotics. R. 383. He gave her an injection, prescribed Naprosyn, and recommended home physical therapy. R. 383.

On November 17, 2008, Parris had laparoscopic gastric bypass surgery. R. 527-29. Follow-up notes from Dr. Freeman show Parris lost weight, and that symptoms related to her obesity either resolved, or improved. R. 609-11. In a December 17, 2008, letter to her primary care physicians, Dr. Freeman wrote that Parris was doing very well and was starting to increase her exercise. R. 549. On March 4, 2008, Dr. Freeman wrote that Parris was doing very well, and that all of her comorbid conditions had either improved or resolved. R. 548. His treatment note on that date indicates she was doing sit-ups and floor exercises, and that she still had some musculoskeletal pain. R. 609.

On December 29, 2008, Parris saw Dr. Rickless complaining of left wrist pain after falling at home. R. 380. X-rays showed a fracture of the distal radius, and Dr. Rickless applied a splint. R. 380.

Parris saw Dr. Chindalore on March 4, 2009, with complaints of bilateral knee pain. R. 430. Dr. Chindalore noted he had not seen Parris for almost one and one-half years. R. 430. Parris reported she had "started hurting in her knees again for the last few months." R. 430. Dr.

7

Chindalore noted osteoarthric changes in her knees. R. 430. However, he found her "hands, wrists, elbows, shoulders, ankles knees, and hips ha[d] good range of motion without any effusions." R. 430. He found flexion of the lumbosacral spine was within normal limits, and that her gait was normal. R. 430. He administered injections to Parris's knees, and counseled her about her fibromyalgia. R. 430. He also ordered x-rays of Parris's hips. R. 430. The x-rays showed "no sacroiliitis or hip arthritis." R. 453.

Parris presented to the emergency room on April 15, 2009, after she fell at home and cut her left knee. R. 391. The wound was sutured, and she was discharged. R. 392.

On April 22, 2009, Dr. Chindalore noted the presence of sutures, and that Parris had suffered an injury to her left knee. R. 428. He again found Parris's "hands, wrists, elbows, shoulders, ankles knees, and hips ha[d] good range of motion without any effusions." R. 428. He also found that flexion of the lumbosacral spine was within normal limits, and that her gait was normal. R. 428.

The medical records contain an initial evaluation of Parris's depression and anxiety by Ms. Huie, a counselor, dated June 16, 2009. R. 509. Ms. Huie indicated Parris should follow-up with a psychiatrist, but there is no record that she did so. R. 509.

Parris saw Dr. Morgan on June 20, 2009, with complaints of urinary frequency and some anxiety. R. 462. She told Dr. Morgan that she was going through a divorce, and was also having problems with her son. R. 462. She denied suicidal ideation and requested a change in her medications. R. 462. Dr. Morgan's diagnoses included Major Depression, single episode without melancholia or psychotic features, and Generalized Anxiety Disorder. R. 463.

Parris saw Dr. White on August 24, 2009, complaining of neck pain. R. 479. Dr. White noted she had lost a lot of weight, and had a normal gait and station. R. 479. She had good muscle

strength in her upper and lower extremities, although she experienced pain when rotating her right shoulder. R. 479. Dr. White found Parris's attention span and concentration were normal. R. 479. He opined she needed MRI scans of the right shoulder and neck, and an x-ray of the coccyx. R. 479. The MRI was suggestive of early rotator cuff tendinosis and/or tedinopathy; mild degenerative changes of the rotator cuff; a SLAP type I injury; and hypertrophy of the acromioclavicular joint with at least mild impingement on the supraspinatus muscle. R. 668. The x-ray of the sacrum and coccyx was "essentially normal." R. 669.

Parris was seen at Anniston Orthopaedic Associates on September 24, 2009. R. 515. She reported "having considerable pain about the tailbone region," and "some residual pain in her right shoulder." R. 515. When she was examined, her right shoulder had full range of motion, but with pain at "extremes of abduction internal rotation." R. 515. She had mild tenderness of the AC joint, and in the subacromial region. R. 515. The examiner noted that she had "significant tenderness to palpation [of the] sacrococcygeal junction." R. 515. It was also noted that "[i]n spite of normal sacral coccygeal X-rays she seems to have a fairly acute flexion angulation at the sacral coccygeal junction." R. 515. The diagnostic assessment was status post right shoulder decompression with residual rotator cuff tendonosis and coccygodynia.[5] R. 515. She was given injections of the right shoulder and the right sacral coccygeal region, and instructed on exercises for her shoulder. R. 515.

On January 2, 2010, shortly after her date last insured, Parris presented at the emergency room complaining of nausea and vomiting. R. 665. The musculoskeletal examination note indicates she moved all extremities well. R. 666. She was diagnosed with vomiting and acute abdominal pain. R. 667.

---

[5] Coccygodynia is "pain in the coccycx and the neighboring region." *Dorland's Illustrated Medical Dictionary* 347 (28th Edition).

After the ALJ hearing, Parris was sent for a consultative evaluation by Dr. Iyer on March 21, 2011. R. 672. Dr. Iyer noted Parris was alert and not in any acute distress. R. 673. On examination, she had full range of motion in her left shoulder, wrists, elbows, and lower extremities. R. 673. However, she had decreased range of motion in her right shoulder. R. 673. Dr. Iyer opined Parris "may have an impairment of functions involving lifting, carrying, overhead activities, and bending." R. 674. However, Dr. Iyer found she did "not have any limitation of functions involving sitting, standing, walking, hearing, or speaking." R. 674. In an attached medical source statement, Dr. Iyer indicated Parris can sit for thirty minutes, stand for one hour, and walk for one hour at one time without interruption. R. 678. Dr. Iyer indicated that in an eight-hour workday, Parris would be able to sit for three hours, stand for four hours, and walk for four hours. R. 678. The medical source statement also indicates Parris would be able to lift and carry up to 10 pounds frequently, and up to 20 pounds occasionally. R. 677.

**IV.    ISSUES PRESENTED**

Parris's brief raises the following issues: 1) whether the ALJ's consideration of her testimony and other evidence related to a prior claim constitutes unlawful bias; 2) whether she was given an opportunity to address the evidence related to the prior claim; and 3) whether the hypothetical question posed to the vocational expert included all of her impairments.

**V.    DISCUSSION**

After careful review, and upon full consideration of Parris's arguments for reversal, the court concludes that substantial evidence supports the ALJ's findings of fact and that he correctly applied the law.

**A.     Parris's Claim of Bias**

Parris argues the "ALJ's obsession with [her] prior claim and prior decision . . . indicates unlawful bias toward [her]." Pl.'s Br. 17-18.  She argues it was improper for the ALJ to find that her testimony was not credible based on things she said or did during the period relating to her prior claim.  *Id.* at 17.

A presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies.  *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (finding that hearing officers who decide Part B Medicare claims "serve in a quasi-judicial capacity, similar in many respects to that of administrative law judges," and are presumed to be unbiased).  This presumption may be rebutted by showing a conflict of interest or some other specific reason for disqualification. *Id.*  Under the regulations, an ALJ is disqualified from conducting a hearing "if he or she is prejudiced or partial with respect to any party." 20 C.F.R. § 404.940.  Therefore, Parris may overcome the presumption of honesty and integrity by showing that ALJ was prejudiced against her.

Such prejudice exists when an ALJ considers evidence outside the record in deciding a claimant's case.  In *Miles v. Chater,* the court found that an ALJ's observation that a particular doctor's examinations performed for the claimant's attorney "invariably conclude that the person being examined is totally disabled" was not supported by evidence in the record. 84 F.3d 1397, 1401 (11th Cir. 1996).  Therefore, it found the claimant was "entitled to an unbiased reconsideration of her application for benefits before a different ALJ." *Id.*

To constitute an "extrajudicial source" sufficient to require disqualification, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384

11

U.S. 563, 583 (1966); *see also United States v. Amedeo* 487 F.3d 823, 828 (11th Cir 2007) (same). "Opinions formed on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added); *see also Amedeo* 487 F.3d at 829 (same). Therefore, if the alleged bias does not stem from an extrajudicial source, it must be "so extreme as to display clear inability to render fair judgment." *Liteky* 510 U.S. at 551.

Critical remarks made during the course of a proceeding are usually insufficient to establish bias under this standard. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* at 555. Even "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish bias or partiality. *Id.* at 555-56.

Parris has not demonstrated that the ALJ's decision was based on "an extrajudicial source" or on facts other than those he learned from his participation in the case. *See Grinnell*, 384 U.S. at 583. There is nothing in the transcript of the hearing to suggest that the ALJ relied upon any facts that were not part of the record. Moreover, a review of his decision shows the ALJ cited only to evidence contained in the record. R. 10-29. As with many cases, the record contains evidence produced in connection with a prior claim. The ALJ learned of that evidence from his participation in this case. Therefore, it was not from an extrajudicial source.

Likewise, Parris has not shown the ALJ's decision displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky* 510 U.S. at 555. She contends the ALJ was biased because he relied on statements and other evidence from her prior application in assessing her credibility. Pl.'s Br. 17. However, the regulations provide that an ALJ will consider all of the available evidence in evaluating a claimant's subjective allegations. *See* 20 C.F.R. §§ 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence . . . ."). The regulations also require the ALJ to consider inconsistencies or conflicts between a claimant's testimony and other evidence in evaluating her credibility. *See* 20 C.F.R. §§ 404.1529(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). Therefore, the ALJ's consideration of evidence relating to Parris's prior claim was consistent with the requirements of the regulations, and does not suggest any "obsession" with Parris's prior claim. Nor does his consideration of that evidence show an antagonism or bias against Parris that would prevent him from making a fair judgment on her claim.

A review of the hearing transcript and the ALJ's written decision demonstrates the ALJ fulfilled his duty of developing a full and fair record and gave Parris every opportunity to present all her evidence. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (noting that the claimant bears the burden of proving disability and is responsible for producing evidence demonstrating she is disabled). The ALJ inquired about gaps in the record concerning Parris's alleged fibromyalgia diagnosis, and gave her thirty days to furnish additional medical records. R. 97-99. To ensure he had enough medical information, the ALJ also ordered a consultative examination, and informed Parris that he would wait until he received all the necessary information

13

before making a decision in her case. R. 99. These efforts by the ALJ to develop evidence related to Parris's claim simply contradict her allegation of bias.

Likewise, the ALJ's discussion of the evidence in his decision does not show any bias toward Parris. The ALJ extensively discussed the medical evidence relevant to the period being adjudicated – February 22, 2008 through December 30, 2009. R. 19-26. Consistent with his comments at the hearing, the ALJ addressed the evidence submitted after the hearing in his decision. R. 25-27. He discussed the September 2009 MRI of Parris's neck, which showed a mild spondylitic change. R. 25, 670. He also considered Parris's medical records from her visit to the local hospital emergency room on January 2, 2010, due to nausea and vomiting. R. 26, 653. Finally, the ALJ discussed the findings of the consultative examination he ordered at the hearing. R. 26, 672-82.

Parris has not demonstrated that the ALJ formed an opinion on the merits based on an extrajudicial source, and it was not improper for him to rely on facts in the record that he was aware of because of his participation in her case. *Grinnell* 384 U.S. at 583. Nor do the ALJ's comments mentioned by Parris in her brief show the "high degree" of antagonism on behalf of the ALJ that would "make fair judgment impossible." *Liteky* 510 U.S. at 555. Therefore, Parris's argument that the ALJ was biased against her is without merit.

**B.     Parris's Oportunity to Address Evidence Related to Her Previous Claim**

Parris also asserts that she had no notice the ALJ would consider evidence from the prior hearing. Pl.'s Br. 17. She also argues that she had no opportunity to explain any inconsistencies in the record. *Id.* However, during the hearing, Parris's attorney stated that there was no objection to admission of the exhibits from her prior claim containing the inconsistent statements discussed by the ALJ. R. 39. The ALJ also questioned Parris about the nature of the impairments she alleged in

her prior claim, and whether they differed from those alleged in her present claim. R. 41-44. Parris's attorney was also given the opportunity to question her, and did so extensively. R. 49-70. Finally, the ALJ also afforded Parris time to submit additional medical evidence after the hearing. R. 97-99. Therefore, the record shows Parris had ample notice that the ALJ was considering evidence from her prior claim, and that her attorney was given an opportunity to explore contradictions between that evidence and Parris's statements in the current claim.

**C.    The ALJ's Hypothetical Question Posed to the Vocational Expert**

Parris argues the ALJ erred by disregarding the VE's testimony in response to a hypothetical question that assumed she is unable to sit, stand or walk for very long periods; cannot lift very much; and has pain in multiple places that prevents her from maintaining adequate persistence, concentration, and pace. Pl.'s Br. 20. The VE testified that those restrictions would preclude all gainful activity. R. 92-93. However, in response to hypothetical questions based on Parris's RFC as assessed by the ALJ, the VE testified she would be able to perform jobs that exist in regional and national economy. R. 89-92.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002). However, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 842 (11th Cir. 2013) (same); *see also McSwain v. Bowen*, 814 F.2d 617, 620 (11th Cir. 1987) (observing the ALJ did not err in failing to include in his hypothetical question restrictions from conditions that were substantially controlled by medication).

Here, the ALJ found Parris's subjective complaints of pain and other symptoms were not credible to the extent they were inconsistent with his RFC assessment. R. 27. If the ALJ properly discredited Parris's subjective testimony, he was not required to include limitations based on that testimony in his RFC finding, or in his hypothetical question to the VE.

In this Circuit a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The standard requires a claimant to show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). "[W]hether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact . . . subject to review in the courts to see if it is supported by substantial evidence." *Id.* "[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*. An ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *Foote*, 67 F.3d at 1562. An ALJ's "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

In addressing Parris's credibility, the ALJ considered the treatment notes of Drs. Rickless, Chindalore, and White. The ALJ noted that, upon examination, Dr. Rickless found no limitation

of motion of the neck, spine, arms, hips, and knees. R. 21. He observed that Dr. Chindalore found Parris had "good range of motion to her hands, wrists, elbows, shoulders, ankles, knees and hips without any effusions." R. 22. He also noted Dr. Chindalore found Parris's flexion of her lumbar spine was within normal limits, and that her gait was normal. R. 22. The ALJ observed that Dr. White found Parris had a normal gait and sation; good muscle strength in her upper and lower extremities; and that her attention span and concentration were normal. R. 22. These treatment notes provide substantial evidence to support the ALJ's credibility finding.

The ALJ also considered Parris's reported daily activities in assessing the impact of her symptoms. R. 25. Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that a claimant's daily activities is a factor that will be considered in assessing alleged symptoms); *Dyer v. Barnhart* 395 F.3d 1206, 1212 (11th Cir. 2005) (endorsing the ALJ's consideration of a claimant's activities of daily living in assessing credibility).

In her function report, Parris reported engaging in various activities, including caring for her husband, son, and stepson; cooking simple meals; performing light housework; attending church; and going shopping. R. 280-81, 284. The ALJ also found the third party reports of Parris's routine functioning do not support disabling limitations. R. 25. One of the third party function reports indicates Parris performs light housework that includes doing laundry, washing dishes, cooking, dusting, and cleaning bathrooms. R. 303, 305.

Therefore, the ALJ properly applied the Eleventh Circuit pain standard in considering Parris's subjective allegations. He articulated reasons why he did not credit Parris's allegations of disabling symptoms, and those reasons are supported by substantial evidence. Because (1) those findings are

supported by substantial evidence, and (2) this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility findings. Therefore, the ALJ was not required to include restrictions based on Parris's subjective allegations in his RFC assessment, or in the hypothetical question to the VE. His reliance on the VE's answers to hypothetical questions that were based on his findings regarding Parris's RFC, rather than on those reflecting her subjective allegations, presents no reversible error.

## VI.   CONCLUSION

The court concludes the ALJ's determination that Parris is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

**DONE** and **ORDERED** this ___15th___ day of May, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE